**PEDRO DURAND**
A# 206-035-742
Imperial Regional Detention Facility
1572 Gateway Rd
Calexico, CA 92231
PRO SE

FILED

Feb 9 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ shellyy          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

PEDRO DURAND,
A# 206-035-742

Petitioner,

v.

JAMISON MATUSZEWSKI, San Diego Field Office Director, Immigration and Customs Enforcement; JOSEPH SUAZO, Calexico Assistant Field Office Director, Immigration and Customs Enforcement; WILLIAM DEREVERE, Facility Administrator, Imperial Regional Detention Facility; MATTHEW ALLEN, Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; ALEJANDRO MAYORKAS, Secretary of Homeland Security,

Respondents.

Case No. **'23CV0279 RBM BGS**

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

Pedro Durand ("Petitioner") respectfully petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention by Respondents, as follows:

## **INTRODUCTION**

1. Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Imperial Regional Detention Facility ("Imperial") pending removal proceedings.

2. Petitioner has been detained in immigration custody for 21 months even though no neutral decisionmaker—whether a federal judge or an immigration judge—has conducted a hearing to determine whether this lengthy incarceration is warranted based on danger or flight risk, the only two permissible bases for immigration detention prior to entry of an executable removal order.

3. Petitioner submits the instant petition bringing forth two claims of relief for (1) prolonged detention without a constitutionally adequate hearing in violation of his Fifth Amendment Right to Due Process and (2) freedom from unlawful detention pursuant to his Fifth Amendment Right to Substantive Due Process.

4. Petitioner therefore requests that this Court issue a writ of habeas corpus, to determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

5. In the alternative, Petitioner requests that this Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; (2) if the government cannot meet its

burden , the immigration judge orders Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

## JURISDICTION AND VENUE

6.    Petitioner is detained in the custody of Respondents at the Imperial Regional Detention Facility in Calexico, California.

7.    Jurisdiction is proper under 28 U.S.C. §§ 1331, 2241; the Suspension Clause, U.S. Const. art. I, § 2; and 5 U.S.C. § 702.

8.    Congress has preserved judicial review of challenges to prolonged immigration detention. *See Jennings v. Rodriguez*, _ U.S. _ , 2018 WL 1054878 at *7-*9 (Feb. 27, 2018)(holding that 8 U.S.C. §§ 1226(e), 1252(b)(9) do not bar review of challenges to prolonged immigration detention); *see also id.* at *44 (Breyer , J., dissenting). ("8 U.S.C. § 1252(b)(9), . . . by its terms applies only with respect to review of an order of removal") ("internal quotation marks and brackets omitted).

9.    Section 1252(f)(1) does not repeal this Court's authority to grant the relief Petitioner seeks because, *inter alia*, Petitioner is in removal proceedings. *See* 8 U.S.C. § 1252(f)(1) (exempting claims by "an individual alien against whom proceedings . . . have been initiated"); *Reno v. Am.-Arab Anti-Discrimination Comm*, 525 U.S. 471, 482 (1999) (Section 1252(f) "does not extend to individual cases").

10.    If Section 1252(f)(1) did bar the relief Petitioner seeks, it would violate the Suspension Clause.

11.    Even if otherwise applicable, Section 1252(f)(1) does not bar declaratory relief.

12.    Venue is proper in this District under 28 U.S.C. § 1391 because at least one Respondent is in this District, the Petitioner is detained in this District, and a substantial part of the events giving rise to the claims in this action took place in this District.

## PARTIES

13.    Petitioner, Pedro Durand, is a noncitizen currently detained by

Respondents pending removal proceedings.

14.    Respondent Jamison MATUSZEWSKI is the San Diego Field Office Director for ICE Enforcement and Removal Operations ("ERO"), a federal law enforcement agency within the U.S. Department of Homeland Security ("DHS"). The San Diego Field Office Is responsible for, among other things, carrying out ICE's immigration detention operations at Imperial Regional Detention Facility. Respondent Matuszewski is a legal custodian of Petitioner.

15.    Defendant Joseph SUAZO is the Assistant Field Office Director for ICE ERO in Calexico, California. Respondent Suazo is a legal custodian of Petitioner.

16.    Respondent William DEREVERE is the Facility Administrator of Imperial Regional Detention Facility and is employed by the private corporation Management & Training Corporation. Respondent DeRevere is the immediate physical custodian of Petitioner.

17.    Respondent Matthew T. ALBENCE is the Deputy Director and Senior Official Performing the Duties of the Director of ICE. Respondent Albence is responsible for ICE's policies, practices, and procedures, including those related to the detention of immigrants. Respondent Albence is a legal custodian of Petitioner.

18.    Respondent Alejandro MAYORKAS is the Secretary of DHS, an agency of the United States with several components responsible for enforcing United States immigration laws. Respondent Mayorkas is a legal custodian of Petitioner.

## STATEMENT OF FACTS

19.    Petitioner is a 27 year old native and citizen of Mexico. On or about June 23, 2014, DHS initiated proceedings against Petitioner through the issuance of a notice to appear ("NTA") which charged Petitioner with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA" or the "Act"), as amended, as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *See* Exhibit A. (Notice to Appear). On May 28, 2021, following Petitioner's release

4

from state custody due to a 2014 Attempted Murder conviction, DHS reopened his immigration case, which had been administratively closed, and resumed removal proceedings against him. Petitioner was subsequently taken into DHS custody where he applied for relief under the Convention Against Torture ("CAT"). On May 12, 2022, an Immigration Judge ("IJ") denied the relief Petitioner sought and ordered him removed from the United States to Mexico. Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). The BIA dismissed Petitioner's appeal on October 7, 2022. *See* Exhibit B. Petitioner timely petitioned to the Court of Appeals for the Ninth Circuit ("Ninth Circuit") for review of the B.I.A's decision. *See Durand v. Garland*, Case No. 22-1747 (9th Cir. 2022). Petitioner was recently granted a stay of removal pending review before the Ninth Circuit and remains detained by Respondents into the unforeseeable future due to the recent commencement of the appeal review before the court of appeals.

20.     Petitioner has been detained in DHS custody since May 28, 2021.

21.     Petitioner has been detained for 21 months, yet has not been provided a bond hearing before a neutral decision maker to determine whether his prolonged detention is justified based on danger or flight risk.

22.     Petitioner asserts that the Imperial facility has been faulted by federal government agency Office of Inspector General ("OIG") when conducting an unannounced inspection of Imperial in 2020 as the inspectors found violations of ICE detention standards that threatened the health, safety, and rights of detainees. It was clearly found that "Poor Conditions" at "IRDF" "Endangered the Health and Safety of Detainees," and that the detainee showers at Imperial were unsanitary as they "observed mold, rust, and peeling paint in showers in detainee housing areas".[1]

23.     Petitioner asserts that he has developed breathing complications due to the toxic air at the facility which has been a constant concern and which was the subject of

[1] Off. of Insp. Gen.,, *ICE Needs to Address Prolonged Administrative Segregation and Other Violations at Imperial Regional Detention Facility* (Dec. 18 2020), https://www.oig.dhs.gov/sites/default/files/assets/2020-12/OIG-21-12-Dec20.pdf, at p. 6.

5

a federal complaint filed by detained and outside advocates.[2] Petitioner also raised concerns regarding the poor conditions of the Imperial facility to the BIA when challenging the denial of a change of venue. *See* Exhibit A at 3.

24.    Petitioner asserts that he has been the subject of retaliation for filing complaints regarding the conditions of the facility. Petitioner asserts that the constant retaliation has also been the subject of a federal complaint filed by people detained at Imperial and by outside advocates.[3]

25.    Petitioner asserts that the abuse of solitary confinement at Imperial has also been the subject of a federal lawsuit filed by a person detained at Imperial.[4]

## LEGAL BACKGROUND

26.    "' It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."' *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id.* at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restrain or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible

---

2 Kate Morrissey, *Immigration detainees say there's contaminated air, water at Imperial Regional Detention Facility*, The San Diego Union-Tribune, Jan. 28, 2022 at 3-4. https://www.sandiegouniontribune.com/news/immigration/story/2022-01-28/contaminated-air-water-imperial-regional-detention

3 Kate Morrissey, *Complaint alleges Calexico immigration detention officials use solitary confinement as retaliation*, The San Diego Union-Tribune, Sept. 14, 2022, available at https://www.sandiegouniontribune.com/news/immigration/story/2022-09-14/complaint-calexico-immigration-detention

4 Andrea Castillo, *ICE held a man in solitary confinement for more than a year. He's suing under a new California law*, Los Angeles Times, October 14, 2021, available at: https://www.latimes.com/california/story/2021-10-14/ice-lawsuit-california-solitary-confinement-detention-citizen

6

noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious").

27.    Due process therefore requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restrain." *Id.* at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id.*; *Demore*, U.S. at 528.

28.    Following *Zadvydas* and *Demore*, every circuit court of appeals to confront the issue has found either the immigration statutes or due process require a hearing for noncitizens subject to unreasonably prolonged detention pending removal proceedings. *See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199 (11th Cir. 2016) (detention under 8 U.S.C. § 1226(c)); *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016) 8 U.S.C. § 1226(c)); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (8 U.S.C. § 1226(c)); *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060 (9th Cir. 2015) (8 U.S.C. 1226(c)) and 8 U.S.C. § 1225(b)); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011) (8 U.S.C. § 1226(c)); *Diouf v. Holder (Diouf II)*, 634 F.3d 1081 (8 U.S.C. § 1231(a)); *Ly v. Hansen*, 531 F.3d 263 (6th Cir. 2003) (8 U.S.C. § 1226(c)) (requiring release when mandatory detention exceeds a reasonable period of time).

29.    Recently, the Supreme Court held that the Ninth Circuit erred by interpreting Sections 1226(c) and 1225(b) to require bond hearings as a matter of statutory construction. *Jennings v. Rodriguez*, _ U.S._ , 2018 WL 1054878 at *10 (Feb. 27, 2018). Because the Ninth Circuit had not decided whether the Constitution itself requires bond hearings in cases of prolonged detention, the Court remanded for the Ninth Circuit to address the issue. *Id.* at *10. The majority opinion did not express any views on the constitutional question, and left it to the lower courts to address the issue in the first instance.

30.    Due process requires that the government provide bond hearings to

noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law." *Id.* at 28 (Breyer, J., dissenting) (internal quotations and citations omitted). While the Supreme Court upheld the mandatory detention of a noncitizen under Section 1226(c) in *Demore*, it did so based on the petitioner's concession of deportability and the Court's understanding that detentions under 1226(c) are typically "brief." *Demore*, 538 U.S. at 522 n.6, 528. Where a noncitizen has been detained for a prolonged period or is pursuing a substantial defense to removal or claim to relief, due process requires an individualized determination that such a significant deprivation of liberty is warranted. *Id.* at 532. (Kennedy, J., concurring) ("individualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified"). *See also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (detention beyond the "initial commitment" requires additional safeguards); *McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) ("lesser safeguards may be appropriate" for "shortterm confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (in Eighth Amendment context, "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards").

31. Consistent with this view, the federal courts have made clear that prolonged detention pending removal proceedings without a bond hearing likely violates due process. *See supra; Jennings*, 2018 WL 1054878 at *37 (Breyer, J, dissenting) ("an interpretation of the statute before us that would deny bail proceedings where detention is prolonged would likely mean that the statute violates the Constitution"). In addition, numerous circuits and district courts have expressly found that the Constitution requires bond hearings in cases of prolonged detention. *See, e.g., Diop*, 656 F.3d at 233; *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 544-50 (S.D.N.Y. 2014); *Monestime v. Reilly*, 704 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2010).

32. Detention without a bond hearing is unconstitutional when it exceeds six months. *See Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under

Section 1226(c), which last "roughly a month and a half in the vast majority of cases in which the alien chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months").

33.     The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continued incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-months prison term . . ." *Duncan v. State of La.*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for confinement without individualized inquiry for civil commitment). The Court has likewise recognized the need for bright line constitutional rules in other areas of law. *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (14 days for re-interrogation following invocation of Miranda rights); *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (48 hours for probable cause hearing).

34.     Even if a bond hearing is not required after six months in every case, at a minimum, due process requires a bond hearing after detention has become unreasonably prolonged. *See Diop*, 656 F.3d at 234. Courts that apply a reasonableness test have considered three main factors in determining whether detention is reasonable. First, courts have evaluated whether the noncitizen has raised a "good faith" challenge to removal—that is, the challenge is "legitimately raised" and presented "real issues." *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015).[5]

---

5  Notably, "aliens should [not] be punished for pursuing avenues of relief and appeals." *Sopo*, 825 F.3d at 1218 (citing *Ly*, 351 F.3d at 272). Thus, courts should not count a continuance against the noncitizen when he obtained it in good faith to prepare his removal case. Instead, only "[e]vidence that the alien acted in bad faith or sought to deliberately slow the proceedings"—for example, by "[seeking] repeated or unnecessary continuances, or [filing] frivolous claims and appeals"— "cuts against" providing a bond hearing. *Id.*; *see also Chavez-Alvarez*, 783 F.3d at 476; *Ly*, 351 F.3d at 272.

7

Second, reasonableness is a "function of length of the detention," with detention presumptively unreasonable if it lasts six months to a year. *Id.* at 477-78; *accord Sopo*, 825 F.3d at 1217-18. Third, courts have considered the likelihood that detention will continue pending future proceedings. *Chavez-Alvarez*, 783 F.3d at 478 (finding detention unreasonable after nine months of detention, when the parties could "have reasonably predicted that Chavez-Alvarez's appeal would take a substantial amount of time, making his already lengthy detention considerably longer"); *Sopo*, 825 F.3d at 128; *Reid*, 819 F.3d at 500.

35. At a bond hearing, due process requires certain minimal protections to ensure that a noncitizen's detention is warranted: the government must bear the burden of proof by clear and convincing evidence to justify continued detention, taking into consideration available alternatives to detention; and if the government cannot meet its burden, the noncitizen's ability to pay a bond must be considered in determining the appropriate conditions of release.

36. To justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or a flight risk. that the noncitizen is a danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Where the Supreme Court has permitted civil detention in other contexts, it has relied on the fact that the Government bore the burden of proof at least by clear and convincing evidence. *See United States v. Salermo*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention where "full-blown adversary hearing," requiring "clear and convincing evidence" and "neutral decisionmaker"); *Faucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, inter alia, they placed burden on detainee).

37. The requirement that the government bear the burden of proof by clear and convincing evidence is also supported by application of the three-factor balancing

test from *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976). First, prolonged incarceration deprives noncitizens of a "profound" liberty interest. *See Diouf II*, 634 F.3d at 1091-92 (9th Cir. 2011). Second, the risk of error is great where the government is represented by trained attorneys and detained noncitizens are often unrepresented and frequently lack English proficiency. *See Santosky v. Kramer*, 455 U.S. 745, 763 (1982) (requiring clear and convincing evidence at parental termination proceedings because "numerous factors combine to magnify the risk of erroneous factfinding" including that "parents subject to termination proceedings are often poor, uneducated, or members of minority groups" and "[t]he State's attorneys usually will be experts on the issues contested"). Moreover, detainees are incarcerated in prison-like conditions that severely hamper their ability to obtain legal assistance, gather evidence, and prepare for a bond hearing. *See infra* ¶ 42. Third, placing the burden on the government imposes minimal cost or inconvenience, as the government has access to the noncitizen's immigration records and other information that it can use to make its case for continued detention.

38. Due process also requires consideration of alternatives to detention. The purpose of immigration detention is to ensure a noncitizen's appearance during removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to this purpose if there are alternative conditions of release that could mitigate risk of flight. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). ICE's alternatives to detention program— the Intensive Supervision Appearance Program—has achieved extraordinary success in ensuring appearance at removal proceedings, reaching compliance rates close to 100 percent. *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017) (observing that ISAP "resulted in 99% attendance rate at all EOIR hearings and 95% attendance rate at final hearings"). It follows that alternatives to detention must be considered in determining whether prolonged incarceration is warranted.

39. Due process likewise requires consideration of a noncitizen's ability to pay a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if

9

the individual's 'appearance at trial could reasonably be assured by one of the alternate forms of release.'" *Id.* at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir. 1978) (en banc)). It follows that—in determining the appropriate conditions of release for immigration detainees—due process requires "consideration of financial circumstances and alternative conditions of release" to prevent against detention based on poverty. *Id.*

40. Evidence about immigration detention and the adjudication of removal cases provide further support for the due process right to a bond hearing in cases of prolonged detention.

41. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 2018 WL 1054878 at *27 (Breyer, J., dissenting). Among a class of immigration detainees in the Central District of California held for at least six months ("*Rodriguez* class"), the average length of detention was over a year, with many people held far longer. In numerous cases, noncitizens are incarcerated for years until winning their immigration cases. *Id.* (identifying cases of noncitizens detained for 813, 608, and 561 days until winning their cases). For noncitizens who have some criminal history, their immigration detention often dwarfs the time spent in criminal custody, if any. *Id.* ("between one-half and two-thirds of the class served sentences less than six months").

42. Noncitizens are detained for lengthy periods because they pursue meritorious claims. Among the *Rodriguez* class, 40 percent of noncitizens subject to Section 1226(c) won their cases, and two-thirds of asylum seekers subject to Section 1225 won asylum. *See id.* Detained noncitizens are able to succeed at these dramatically high rates despite the challenges of litigation in detention, particularly for the majority of detainees who lack legal counsel. *See* Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 36 (2015) (reporting government data showing that 86% of immigration detainees lack counsel).

10

43.     Immigration detainees face severe hardships while incarcerated. Immigration detainees are held in lock-down facilities, with limited freedom of movement and access to their families: "the circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 2018 WL 1054878 at *28 (Breyer, J., dissenting); *accord Chavez-Alvarez*, 783 F.3d at 478; *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo*, F.3d at 1218, 1221. "And in some cases the conditions of their confinement are inappropriately poor." *Jennings*, 2018 WL 1054878 at *28 (Breyer, J., dissenting) (citing Dept. of Homeland Security (DHS), Office of Inspector General (OIG), *DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities* (2017) (reporting in-stances of invasive procedures, substandard care, and mistreatment. e.g., indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock dock for sharing a cup of coffee with another detainee.)).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

44.     Petitioner re-alleges and incorporates by reference the paragraphs above.

45.     The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. Amend. V.

46.     To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk.

47.     For these reasons, Petitioner's ongoing detention without a hearing violates due process.

11

## SECOND CLAIM FOR RELIEF
## FREEDOM FROM UNLAWFUL DETENTION PURSUANT TO FIFTH AMENDMENT RIGHT TO SUBSTANTVE DUE PROCESS

48.     Petitioner re-alleges and incorporates by reference the paragraphs above.

49.     The Fifth Amendment of the U.S. Constitution guarantees that civil detainees, including all immigrant detainees, may not be subject to punishment. The Federal government violates this substantive due process right when it subjects a civil detainee to an unreasonably prolonged period of civil incarceration without a hearing before a neutral decisionmaker.

50.     For these reasons, Petitioner's ongoing prolonged detention without a bond hearing violates his Fifth Amendment Right to Substantive Due Process.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1)     Assume jurisdiction over this matter;

2)     Issue a Writ of Habeas Corpus; hold a hearing before this Court if warranted; determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention; and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond;

3)     In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the immigration judge order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond;

12

4)   Issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment and the Fifth Amendment Right to Substantive Due Process;

5)   Grant such relief as the Court deems just and proper.

## VERIFICATION

I, Pedro Durand ("Petitioner"), do certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

DATED: February 5, 2023

Respectfully Submitted,

Pedro Durand
A# 206-035-742
Imperial Regional Detention Facility
1572 Gateway Rd
Calexico, CA 92231
PRO SE

13



Pedro Durand
A# 206-035-742
Imperial Regional Detention Facility
1572 Gateway Rd
Calexico, CA 92231

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
333 W. Broadway  Suite # 420
San Diego, CA 92101