# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO DURAND,<br><br>　　　　Petitioner,<br><br>v.<br><br>MATTHEW ALLEN, et al.,<br><br>　　　　Respondents. | Case No.: 3:23-cv-00279-RBM-BGS<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner Pedro Durand ("Petitioner"), proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") asking the Court to remedy his allegedly unlawful detention by the United States Immigration and Customs Enforcement ("ICE"). (Doc. 1.) Respondents Jamison Matuszewski, Joseph Suazo, William Derevere, Matthew Allen, and Alejandro Mayorkas ("Respondents") filed an Opposition to the Petition ("Opposition"). (Doc. 7.) Petitioner filed a Reply brief ("Reply"). (Doc. 8.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Petition is **GRANTED**.

///
///

## I. BACKGROUND

### A. Immigration Proceedings

Petitioner, a native and citizen of Mexico, is a 27-year-old noncitizen currently detained by ICE at Imperial Regional Detention Facility ("Imperial") pending removal proceedings. (Doc. 1 ¶¶ 1, 13, 19.) About June 23, 2014, the Department of Homeland Security ("DHS") initiated proceedings against Petitioner, charging him with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) "as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time and place other than as designated by the Attorney General." (*Id.* ¶ 19.)

On May 28, 2021, following Petitioner's release from state custody for a 2014 attempted murder conviction, DHS reopened his immigration case, which had been administratively closed, and resumed removal proceedings against him. (*Id.*) Petitioner has been detained in DHS custody since that date. (*Id.* ¶ 20.) Petitioner then applied for relief under the Convention Against Torture ("CAT"). (*Id.* ¶ 19.) On May 12, 2022, an immigration judge ("IJ") denied Petitioner relief and ordered him removed from the United States to Mexico. (*Id.*) Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). (*Id.*) On October 7, 2022, the BIA dismissed Petitioner's appeal. (*Id.*) Petitioner then timely petitioned the Ninth Circuit Court of Appeals for review of the BIA's decision. (*Id.*) Petitioner was recently granted a stay of removal pending review before the Ninth Circuit and thus remains detained by Respondents into the unforeseeable future. (*Id.*)

At the time his Petition was filed, Petitioner had been in DHS custody for 21 months and had not been provided a bond hearing before a neutral decisionmaker to determine whether his prolonged detention was justified based on his "danger or flight risk." (*Id.* ¶¶ 20–21.)

### B. Conditions at Imperial

Petitioner asserts Imperial was faulted by the Office of the Inspector General ("OIG") during an unannounced inspection in 2020 for violations of ICE detention standards threatening the health, safety, and rights of detainees. (*Id.* ¶ 22.) The OIG found

poor conditions at Imperial endangered the health and safety of detainees and the showers were unsanitary, "observ[ing] mold, rust, and peeling paint in showers in detainee housing areas." (*Id.*)  Petitioner asserts he has developed breathing complications due to toxic air at Imperial, which has been a constant concern and the subject of a federal complaint filed by detainees and outside advocates. (*Id.* ¶ 23.)  Petitioner raised the subject of poor conditions at Imperial to the BIA when challenging the denial of a change of venue. (*Id.*)

### C. Retaliation

Petitioner asserts he has been the subject of retaliation for filing complaints regarding conditions at Imperial. (*Id.* ¶ 24.)  Petitioner asserts constant retaliation has been the subject of a federal complaint filed by people detained at Imperial and outside advocates. (*Id.*)  Petitioner asserts the abuse of solitary confinement at Imperial has also been the subject of a federal lawsuit filed by a person detained at Imperial. (*Id.*)

### D. Claims and Prayer for Relief

Petitioner asserts his ongoing prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment (First Claim for Relief). (*Id.* ¶¶ 44–47.)  Petitioner also asserts his ongoing prolonged detention without a bond hearing as a civil detainee amounts to punishment and violates his Fifth Amendment right to substantive due process (Second Claim for Relief). (*Id.* ¶¶ 48–50.)  In his Prayer for Relief, Petitioner requests this Court (1) issue a writ of habeas corpus determining that his detention is not justified because the government has not established by clear and convincing evidence that he presents a risk of flight or danger in light of available alternatives to detention and order Petitioner's release with appropriate conditions of supervision if necessary, or (2) issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge to consider Petitioner's bond. (*Id.* Prayer for Relief ¶¶ 2–3.)  Petitioner also requests this Court issue a declaration that his ongoing prolonged detention violates the Due Process Clause and his substantive due process rights under the Fifth Amendment. (*Id.* Prayer for Relief ¶ 4.)

///

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Petitioner challenges his continued detention as violating the Due Process Clause and his substantive due process rights under the Fifth Amendment, rather than the merits of a removal order. Thus, this Court has subject matter jurisdiction pursuant to § 2241.

### B. 8 U.S.C. § 1226(c)

"The authority to detain certain noncitizens already in the country pending the outcome of removal proceedings is found in 8 U.S.C. §§ 1226(a) and 1226(c)." *Lopez v. Garland*, 631 F. Supp. 3d 870, 874 (E.D. Cal. 2022).[1] "The first provision, which sets out the general rule, places the alien's detention within the Attorney General's discretion." *Sanchez-Rivera v. Matuszewski*, Case No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at *2 (S.D. Cal. Jan. 9, 2023) (citing 8 U.S.C. § 1226(a)). "Regulations allow an alien detained under § 1226(a) to seek a bond hearing, first before an officer from the Department of Homeland Security and then before an immigration judge." *Id.* "The second provision, which is an exception to the general rule, makes detention during removal proceedings mandatory when the alien is 'inadmissible' or 'deportable' for specified reasons—usually because the alien has been convicted of a qualifying criminal offense." *Id.* (citing 8 U.S.C.

---

[1] Judge Boone's decision in *Lopez* recounts the legal history relevant to the question of whether a noncitizen detained under § 1226(c) should, at some point, receive a bond hearing under § 1226(c) itself or under the Due Process Clause. *See* 631 F. Supp. 3d at 873–76.

§ 1226(c)). Under § 1226(c)(2), the Attorney General "may" release an alien "only if" release from custody "is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."

In *Jennings v. Rodriguez*, the Supreme Court reversed the Ninth Circuit's holding in *Rodriguez v. Robbins* (*Rodriguez III*), 804 F.3d 1060 (9th Cir. 2015)[2] and held that a noncitizen detained under § 1226(c) has no statutory right to a bond hearing. 583 U.S. 281, 303–06 (2018). However, the Supreme Court remanded the case to the Ninth Circuit to consider the respondents' related "constitutional arguments on the[ ] merits" in the first instance. *Id.* at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin* (*Rodriguez IV*), 909 F.3d 252, 255–56 (9th Cir. 2018).

The Ninth Circuit has not resolved the question of whether prolonged detention under § 1226(c) without an initial bond hearing violates the Due Process Clause. *See Avilez v. Garland*, 69 F.4th 525, 538 (9th Cir. 2023) (declining to reach the due process argument

---

[2] In *Rodriguez III*, the Ninth Circuit considered a class action by non-citizens challenging "their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." 804 F.3d at 1065. The Ninth Circuit held that for non-citizen detainees under §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of ... confinement grows.'" *Id.* at 1089 (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011)).

for a detainee held under § 1226(c)); *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today.  And we take no position on that question."). Post-*Jennings* and *Rodriguez IV*, "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c).  The district court directives flow not from statutory text, but from due process." *Martinez*, 36 F.4th at 1223.

### III.  DISCUSSION

The parties do not dispute that Petitioner is detained pursuant to the government's mandatory detention authority under § 1226(c).  (*See* Docs. 7–8.)  Thus, the primary question before the Court is whether Petitioner's continued detention under § 1226(c) during the pendency of his immigration proceeding without an initial bond hearing violates his procedural or substantive due process rights under the Fifth Amendment.[3]

**A. Bond Hearing**

Respondents argue that the Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003) upheld the constitutionality of mandatory detention under § 1226(c) during a noncitizen's removal proceeding. (Doc. 7 at 9–12.)[4]  Respondents contend that the bulk of Petitioner's time in detention is attributable solely to his litigation decisions, and the government sought no such delays in Petitioner's immigration proceeding. (*Id.* at 12–14.)  Specifically, Petitioner sought and received five continuances before the IJ to either seek counsel or

---

[3] While Petitioner never directly states that he is raising an as-applied challenge to his prolonged detention under § 1226(c), the Court interprets his Petition as an as-applied, rather than facial, challenge to his detention under § 1226(c). (*See* Docs. 1, 8.) *See Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) ("[J]ust because § 1226(c) does not grant the Attorney General *statutory* authority to release individuals detained … does not mean that the Court does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to that detention without a bond hearing.") (emphasis added).

[4] The Court cites the CM/ECF pagination unless otherwise noted.

prepare his application for relief, totaling 213 days from his initial hearing to his merits hearing. (Docs. 7-6–7-11.) Before the BIA, Petitioner sought and received an extension of time of 20 days to file his brief in support of his administrative appeal. (Doc. 7-12.) Before the Ninth Circuit, Petitioner requested the appointment of pro bono counsel on October 25, 2022, which he received on February 13, 2023. (*Durand v. Garland*, No. 22-1747 (9th Cir. 2022), Docs. 4, 12, 13.)[5] He then sought and was granted a 30-day extension of time to file his opening brief. (*Id.* Docs. 15–16.) His opening brief was filed on June 12, 2023. (*Id.* Doc. 17.) The government's answering brief was filed on August 3, 2023. (*Id.* Doc. 22.) Oral argument was held on January 11, 2024. (*Id.* Doc. 36.)

Petitioner responds that he is entitled to a bond hearing because his detention has become unconstitutionally prolonged, and that Respondents press an overly broad reading of the Supreme Court's opinion in *Demore*. (Doc. 8 at 2–6.) Petitioner responds that he should not be penalized for accessing statutorily permitted processes and exercising his legal right to challenge the government's case against him. (*Id.* at 6–7.) Petitioner argues that, under a reasonableness test, he is entitled to a bond hearing because he raised a good faith challenge to removal, his detention has lasted over 25 months, and there is no deadline for the Ninth Circuit to rule on his appeal. (*Id.* at 7–8.) Alternatively, Petitioner argues that, under the *Matthews v. Eldridge* 424 U.S. 319, 333 (1976) test, (1) his private interest is weighty given his detention for over two years without a bond hearing and his conditions of confinement, (2) his risk of erroneous deprivation is high because he has received no

---

[5] The Court takes judicial notice of the case docket from *Durand v. Garland*, No. 22-1747 (9th Cir. 2022) because it directly relates to the matters at issue in this case, but the Court does not take judicial notice of reasonably disputed facts in the judicially noticed documents. *See Ho v. Nationstar Mortg., LLC*, Case No. 2:19-cv-10532-ODW (JPRx), 2020 WL 7714700, at *1 (C.D. Cal. Dec. 29, 2020) (taking judicial notice of two case dockets relevant to the matter at hand but not reasonably disputed facts in the judicially noticed documents).

bond hearing and has no other mechanism to do so, and (3) the Government's interest in detaining him without providing him a bond hearing is low. (*Id.* at 9–10.)

### i. Applicable Test

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection applies to "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

District courts in the Ninth Circuit have applied various tests to determine when the Due Process Clause requires a bond hearing in a particular § 1226(c) detention case. *See e.g.*, *Salesh P. v. Kaiser*, Case No. 22-cv-03018-DMR, 2022 WL 17082375, at *8–9 (N.D. Cal. Nov. 18, 2022) (finding detainee held under § 1226(c) for fourteen months entitled to bond hearing under the *Matthews v. Eldridge* balancing test); *Lopez*, 631 F. Supp. 3d at 879–82 (creating new three-factor test and finding petitioner, who had been in detention under § 1226(c) for a year, was entitled to bond hearing); *Juarez v. Wolf*, Case No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, Case No. 20-1660 RJB-MLP, 2021 WL 2322823 (W.D. Wash. June 7, 2021) (applying eight-factor test in determining petitioner held in custody under § 1226(c) for 14 months is entitled to bond hearing); *Rodriguez v. Nielsen*, Case No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (finding § 1226(c) detainees are constitutionally entitled to individualized bond hearings after six months of detention).

Recently, two courts in this district applied the *Lopez* three-factor test in deciding this question. *See Sibomana v. LaRose*, Case No. 3:22-cv-933-LL-NLS, 2023 WL 3028093, at 4–5 (S.D. Cal. Apr. 20, 2023) (finding petitioner detained under § 1226(c) for

over 19 months with a pending administrative appeal to the BIA entitled to bond hearing); *Sanchez-Rivera*, 2023 WL 139801, at *6 (holding petitioner detained under § 1226(c) for over three years with a pending appeal before the Ninth Circuit entitled to bond hearing). The Court agrees with the courts in *Sibomana* and *Sanchez-Rivera* that the *Lopez* test is most applicable to due process challenges raised by noncitizens detained under § 1226(c) seeking an initial bond hearing.[6] Under *Lopez*, this Court considers "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." 631 F. Supp. 3d at 879.

### ii. Length of Detention

As of the date of this Order, Petitioner has been in DHS custody for over 32 months. "In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" *Gonzalez v. Bonnar*, Case No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (finding petitioner entitled to bond hearing in § 1226(c) case) (alteration in original) (quoting *Muse v. Sessions*, Case No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018)). Here, Petitioner's detention has continued for over two and a half years. Thus, the Court finds this factor weighs in Petitioner's favor.

### iii. Likely Duration of Future Detention

Petitioner argues that there is no deadline for the Ninth Circuit to consider his appeal and it will take, at a minimum, at least several months to do so. (Doc. 8 at 8.) The

---

[6] The Court agrees with Judge Anello's conclusion in *Sanchez-Rivera*, derived from the reasoning in *Lopez* and other district courts, that "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." 2023 WL 139801, at *5 (quoting *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917, 920 (W.D. Wash. 2020)). Similarly, the Court agrees that the eight-factor test is "not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Id.* at *6 (quoting *Lopez*, 631 F. Supp. 3d at 879).

Government's answering brief in the Ninth Circuit appeal was filed on August 3, 2023. (*Durand v. Garland*, No. 22-1747 (9th Cir. 2022), Doc. 22.) Petitioner sought and was granted a 30-day extension of time to file a reply brief. (*Id.* Docs. 24–25.) Petitioner's reply brief was filed on September 25, 2023. (*Id.* Doc. 29.) Oral argument occurred on January 11, 2024. (*Id.* Doc. 36.) According to the Ninth Circuit's public website, following oral argument, the Court has no time limit to reach a decision "but most cases are decided within 3 months to a year after submission." U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, https://www.ca9.uscourts.gov/general/faq/ (last visited January 5, 2024).[7] It appears Petitioner's appeal could last at least several more months or significantly longer. Thus, the Court agrees with Petitioner that the timing of his appeal in the Ninth Circuit will likely be "sufficiently lengthy such that this factor weighs in favor of Petitioner." *Lopez*, 2022 WL 4586413, at *8.

       **iv.   Delays in Removal Proceeding**

In their Opposition, Respondents argue that the cause of Petitioner's continued detention pending his immigration appeal is Petitioner's five requests for continuance before the IJ, his request for a 20-day extension of time before the BIA, and his appointment of pro bono counsel and an extension to file his opening brief before the Ninth Circuit. (Doc. 7 at 12–14.) Petitioner responds that he should not be penalized for accessing statutorily permitted processes and exercising his legal right to challenge the government's case against him. (Doc. 8 at 6–7.) Petitioner also points to government-caused delays, including waiting four months once in immigration custody for his first hearing in immigration court. (*Id.* at 7.)

The delay factor is neutral here. While the Court recognizes Petitioner sought five continuances before the IJ, his brief extension of time before the BIA and request to appoint pro bono counsel, which the Ninth Circuit found "would benefit the courts review in this

---

[7] The Court *sua sponte* takes judicial notice of this page of the Ninth Circuit's website under Federal Rule of Evidence 201(b)(2) and (c)(1).

petition," (*Durand v. Garland*, No. 22-1747 (9th Cir. 2022), Doc. 12), are not unreasonable. *See Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (finding petitioner subject to detention under § 1226(c) entitled to bond hearing where, even if part of petitioner's detention was attributable to his continuances before the immigration court, he had been detained for eighteen months and the government proffered no evidence that there was a reasonably certain end to his custody in sight). Neither is Petitioner's seeking a thirty-day extension for the filing of each of his opening and reply briefs before the Ninth Circuit unreasonable. (*Durand v. Garland*, No. 22-1747 (9th Cir. 2022), Docs. 15–16, 24–25.) Additionally, Petitioner's four-month delay before his first hearing in immigration court while in immigration custody does not appear to be attributable to Petitioner. Thus, the Court finds that the delay factor is neutral.

   **v. Balancing of *Lopez* Factors**

On balance, both the length of detention and the likely duration of future detention weigh in Petitioner's favor while the delay factor is neutral.[8] Thus, the Court concludes that Petitioner's continued detention has become unreasonable under the Due Process Clause, and he must receive an initial bond hearing. In light of this holding, the Court need not reach Petitioner's substantive due process claim.

   **vi. Respondents' Arguments Concerning *Demore***

The Court is not persuaded by Respondents' reliance on the Supreme Court's opinion in *Demore*. (Doc. 7 at 10–12.) In *Demore*, the Supreme Court rejected a facial challenge to mandatory detention under § 1226(c). *See* 538 U.S. at 513. The petitioner in *Demore* had only been detained for six months. *Id.* at 531. The Supreme Court held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the *brief period* necessary for

---

[8] Even if this Court were to conclude that Petitioner's delays count against him on the delay factor, on balance, the Court would reach the same result.

their removal proceedings." *Id.* at 513 (emphasis added).  The Supreme Court in *Demore* distinguished *Zadvydas v. Davis*, 533 U.S. 678 (2001) in part because, unlike the potentially permanent detention at issue in *Zadvydas*, "[u]nder § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.* at 529.  In support, the Supreme Court cited statistics showing "[t]he Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. … In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Id.*[9]

    *Demore* concerned a facial challenge to a brief period of detention under § 1226(c) pending removal proceedings, not an as-applied due process challenge to a § 1226(c) detainee's prolonged detention without an initial bond hearing at issue here.  As Justice Kennedy explained in his concurrence in *Demore*, under the Due Process Clause, "a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."  538 U.S. at 532.  Petitioner's over two-and-a-half-year detention without an initial bond hearing has become both unreasonable and unjustified under the Due Process Clause.  In light of the Court's ruling that Petitioner receive an initial bond hearing, the Court will now consider who bears the burden of proof at Petitioner's initial bond hearing.

///

---

[9] As Respondents concede, the government later admitted these statistics were inaccurate. (Doc. 7 at 11) (citing *Jennings*, 538 U.S. at 343 (Breyer, J., dissenting) (explaining the government conceded the statistics in *Demore* were wrong and detention normally lasts twice as long)).

### B. Burden of Proof

Respondents argue that, if this Court finds a due process violation and orders Petitioner be afforded a bond hearing, the burden should be on Petitioner to prove by the preponderance of the evidence that he will not pose a danger to the safety of others and that he is likely to appear for court proceedings. (Doc. 7 at 14–16.) Petitioner responds that the Government should bear the burden of justifying his continued detention by clear and convincing evidence, with due consideration to alternatives to detention and Petitioner's ability to pay. (Doc. 8 at 11–13.)

In support of Respondents' argument, they point to *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). (Doc. 7 at 14–15.) There, the Ninth Circuit considered whether a petitioner held under § 1226(a) had a due process right to receive a *second* bond hearing where the government bore the burden by clear and convincing evidence. *See id.* at 1209–10. The Ninth Circuit concluded that he did not because the "existing agency procedures" under § 1226(a) "sufficiently protected Rodriguez Diaz's liberty interest and mitigated the risk of erroneous deprivation." *Id.* The Ninth Circuit also declined to apply *Singh*, which held that the government bears the burden of proof by clear and convincing evidence in a *Casas-Castrillon* initial bond hearing of an alien challenging prolonged detention, including under § 1226(c). *See* 53 F.4th at 1202 (citing *Singh*, 683 F.3d at 1200; *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008)). The Ninth Circuit distinguished *Singh* because that case was not based on § 1226(a) detention throughout. *See id.* The Ninth Circuit also distinguished *Singh*'s ruling concerning the burden of proof at an initial bond hearing because the *Matthews v. Eldridge* balancing for § 1226(c) detainees raised different considerations than those for § 1226(a) detainees. *See id.* at 1202, 1210–11. While the Ninth Circuit noted that *Singh*'s holding relied on the Due Process Clause in service of an "implied statutory right to a bond hearing for persons detained under § 1226(c)" that was rejected in *Jennings*, it declined to determine whether *Singh* remains good law after *Jennings* for § 1226(c) detainees. *Id.* at 1202.

13

Recently, other Ninth Circuit decisions have indicated that *Singh*'s constitutional due process holding remains good law. *See Martinez*, 36 F.4th at 1231 (in § 1226(c) case, "[a]t the outset of its decision, the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community."); *id.* ("In *Singh*, we addressed the due process requirements for bond hearings for aliens subject to prolonged detention. We held that due process requires immigration courts to make contemporaneous records of bond hearings, and most significantly, that the government prove dangerousness or risk of flight by clear and convincing evidence[.]" (internal citations omitted); *Aleman Gonzalez v. Barr*, 955 F.3d 762, 766 (9th Cir. 2020), *rev'd on other grounds Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ("Because *Jennings* did not invalidate our constitutional due process holding in *Singh*, the district court also properly required the Government to bear a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention.").

The Court is persuaded that under the circumstances of this case, Petitioner is entitled to an initial bond hearing where the government must prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community. "Given the substantial liberty interest at stake" considering Petitioner's over two-and-a-half-year detention without an initial bond hearing, the Court concludes that the government "must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community" and the bond hearing must comport with the other requirements of *Singh*. 638 F.3d at 1203–04, 1208 ((observing that the Supreme Court has repeatedly reaffirmed the principle that due process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake ... are both particularly important and more substantial than mere loss of money.") (internal quotation marks and citations omitted); *see also Singh v. Garland*, Case No. 1:23-cv-01043-EPG-HC, 2023 WL 5836048, at *10–11 (E.D. Cal. Sept. 8, 2023) (finding government must justify petitioner's continued detention under § 1226(c) by clear and convincing evidence that he is a flight risk or a danger to the community and collecting cases); *Pham v. Becerra*, Case No. 23-

cv-01288-CRB, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023) ("Absent controlling authority to the contrary, the reasoning of Singh and its holding remains applicable to § 1226(c) cases, like this one, where there is a substantial liberty interest at stake.") (internal quotation marks and citations omitted); *Salesh P.*, 2022 WL 17082375, at *9 (same); *Henriquez*, 2022 WL 2132919, at *6 (same); *Perera*, 598 F. Supp. 3d at 746–47 (same); *Jimenez v. Wolf*, Case No. 19-cv-07996-NC, 2020 WL 510347, at *4 (N.D. Cal. Jan. 30, 2020) (in § 1226(c) case, "*Jennings* explicitly left open the constitutional question and the Ninth Circuit's opinion in *Singh* rests largely on constitutional considerations."); *Bonnar*, 2019 WL 330906, at *7 ("[N]early all the courts that have granted habeas petitions in 1226(c) cases post-*Jennings* have held that the government bears the burden of proof by clear and convincing evidence.") (citation omitted).[10]

**C. Remedy**

Petitioner provides no authority to support his claim that he is entitled to an order of release. (*See* Doc. 1, Prayer for Relief ¶ 2.) Thus, the Court, consistent with other post-*Jennings* cases, concludes that the appropriate remedy is an initial bond hearing before an immigration judge where the government must prove by clear and convincing evidence that Petitioner presents a flight risk or is a danger to the community. *See Sibomana*, 2023 WL 3028093, at *5 (ordering initial bond hearing with burden on government by clear and convincing evidence); *Sanchez-Rivera*, 2023 WL 139801, at *7 (same); *Lopez*, 631 F. Supp. 3d at 882–83 (same).

///

---

[10] The Court declines to require the immigration judge at the initial bond hearing to consider Petitioner's financial circumstances and possible alternative release conditions in determining whether the Government has met its burden by clear and convincing evidence. *See Martinez*, 36 F.4th at 1231 ("Nowhere in *Singh* did we suggest that due process also mandates that immigration courts consider release conditions or conditional parole before deciding that an alien is a danger to the community. *Singh* offers the high-water mark of procedural protections required by due process, and we see no reason to extend those protections any further here.").

## IV.  CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**.  Accordingly, within **thirty (30) days** of the date of service of this order, Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge where the government shall bear the burden to prove by clear and convincing evidence that Petitioner presents a flight risk or is a danger to the community.

**IT IS SO ORDERED**.

DATE:  February 21, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE